ting aside an assignment and satisfaction of the judgment, the attorney having an interest in the same for his debts. Denied.

Frank Sargent, for the motion.

D. B. Magee, opposed.

ROSS, J. Upon obtaining satisfaction of the judgment there is nothing upon which these proceedings can rest. The judgment debtor simply did what he had a legal right to do,—obtained a satisfaction of the judgment against him,—and thereupon these proceedings, so far as the judgment debtor is concerned, necessarily terminated. They were instituted for the purpose of collecting the judgment, and all the rights of the judgment creditor incidental to such a proceeding were for the purpose of aiding in the accomplishment of such collection, and when the judgment is satisfied that is the end of the matter. Whether the bill of sale was executed before the delivery of the satisfaction of the judgment I deem of no importance, for the judgment debtor has obtained a satisfaction of the judgment, which is no longer in existence. The motion to punish for contempt is denied, without costs. So far as setting aside the satisfaction and assignment is concerned, no order can be made without the presence in court of the assignee of the judgment creditor, the owner of the judgment, and I doubt whether the satisfaction can be set aside so far as the judgment debtor is concerned. I do not see what obligation to the judgment creditor or to the moving attorney he has violated. He has simply obtained a satisfaction of the judgment against him from the owner of the same, which he had a right to do.

Quære, if the assignee of the judgment creditor had notice of the agreement between his assignor and the moving attorney herein, whether he cannot be compelled to carry out the agreement of the judgment creditor? In other words, if he made the purchase for the purpose of depriving the attorney for the judgment creditor of the benefit of the agreement entered into between him and his client, is he not liable to carry out such an agreement? The motion to set aside the satisfaction and assignment denied for the reasons stated, but without prejudice to a renewal.

Motion denied, but without prejudice to a renewal.

---

(20 Misc. Rep. 627.)

### In re PFOHL'S ESTATE.

(Surrogate's Court, Erie County. June, 1897.)

1. DECEDENTS' ESTATES—CLAIMS—EVIDENCE.
    The fact of the allowance by an executor of claims against the decedent's estate is no proof of their validity on application for leave to sell realty for payment of said claims.

2. SAME—IMPLIED CONTRACTS—FAMILY RELATIONS.
    Services and accommodation in the nature of board, washing, and care rendered by one member of a family household to another are presumed gratuitous, and to overcome such presumption an express promise to pay must be clearly proved, especially when the claim is against the recipient's estate after death.

**3. Mortgages—Interest—Duty of Life Tenant.**
    A devise for life of mortgaged property imposes on the devisee the duty of paying the interest on the mortgage during the life estate.
**4. Decedents' Estates—Sales of Realty—Debts of Decedent.**
    Interest payable on a mortgage on decedent's estate, and falling due five years after his death, is not a debt of decedent, to pay which realty belonging to the estate will be sold.

Application of Jacob Pfohl, executor of Mary A. Pfohl, deceased, for sale of the real estate of deceased.   Dismissed.

Preston & Preston, for petitioner.
Hugo S. Kiene, for contestants.

MARCUS, S.    The evidence produced upon the hearing to establish this claim of Anna T. Pfohl for the sum of $2,232.40 is very far from being satisfactory.    No personal property to pay debts came into the hands of the executor, nor was there any personal property that might have been converted into money for the payment of such debts.    The question to be decided is, are there any legal and valid debts existing against the decedent which would warrant this court in decreeing that the property should be sold for the purpose of such payment?    Mary A. Pfohl died on the 19th day of June, 1892, in the town of Bellefontaine, Logan county, Ohio.    The real property in question is situated in this county.    Her will was admitted to probate in this court on the 15th day of April, 1897.    The claim presented by Anna T. Pfohl to this executor is sworn and subscribed to on the 21st day of April, 1897, and is for board, washing, nursing, and care, amounting, with interest, to the sum of $2,182.40, such services commencing on the 21st day of May, 1889, and ending on the 19th day of June, 1892, with interest for four years; and the further claim for $50 for interest paid on mortgage on the home December 8, 1896; making in all a total of $2,232.40.    It will be noted that the services for which this claim is presented began May 21, 1889, and ceased June 19, 1892.    The petition alleges that the sum of $272 remains unpaid for funeral expenses, but upon the hearing the same was abandoned. The will of the testatrix gave to her husband, the executor and petitioner herein, a life interest in the property in question, and, upon his death, to be divided equally among the children of the deceased, share and share alike.    It is clear from the evidence that the executor tried to raise money for his own use upon this property before any proceedings were begun for the sale of the same to pay debts, in which effort he seems to have failed.    The claimant is a daughter-in-law of this executor, and the evidence shows that they are interested in the same business.    The fact that the executor has allowed this claim can have no weight with the court, since the allowance or rejection of the same by the executor has not the least relevancy in the matter whatever. "Whether a claim presented bears the seal of his sanction, or whether it comes into court unfathered and unprotected by his magic power, it is treated the same.    It must be run through the same hopper, must be proved, established before the surrogate, and that, too, as I interpret the law, by common-law proof."   Turner v. Amsdell, 3 Dem. Sur. 19.    I am satisfied that this proceeding was begun as a conven-

ient form of raising money for the payment of a debt, which, to my mind, is exceedingly suspicious, and the justice doubtful. This view is strengthened by the testimony that the executor had tried on previous occasions to raise money upon this property, and that the will was never filed for probate until five years after the death of decedent. By the terms of the will, this property is left in such a condition that a sale for the payment of debts would be a convenient form of disposing of the same outside of the directions of the testatrix, and it would seem that in no other way could it be sold than by establishing this claim as a valid claim, and having a direction of this court to sell the real estate of this decedent for that purpose.

The deceased, with her husband, together with their son and his wife, —this claimant,—lived in one household during all the time for which services are claimed. While it is true that where one person renders services for another, which are known and accepted, the law implies a promise to pay for same, yet when such person rendering such services is a member of the same family of the person served, living in the same household, either as a parent, child, or other near relative, a presumption of law arises that such services are gratuitous, so that the express promise of the party served must be shown by proof which is clear and positive, especially, as in this case, when the claim is against the estate of an intestate relative, in order to overcome the presumption. The family relation excludes the idea of an implied contract between persons related by marriage, and living together, and, generally, like considerations apply to all persons who occupy family relations. 17 Am. & Eng. Enc. Law, pp. 341, 342, and cases cited. From the proof offered, I am not satisfied that the claim for board, washing, nursing, and care of Mary T. Pfohl is a valid claim, and therefore reject the same. As to the claim of $50 paid for interest on December 8, 1896, which the petitioner borrowed of the claimant, I am equally well satisfied it should be disallowed, for the reason that a devise to one for life, or for a term of years, imposes on the devisee the duty to keep down all incidental charges upon the land which accrue during the existence of the estate. Further, it can in no way be claimed that the interest becoming due five years after the death of the testatrix, is in any way a "debt of the decedent." Before a decree directing the disposition of real property, or any interest in real property, can be made, the fact must be established that the debt is that of the decedent. The petitioner took the property for the term of his life, with all burdens, and it is his duty to pay the interest. Another question would be presented if the interest was due and payable at the testatrix's death. "Before the surrogate is authorized to make any order for the mortgaging, leasing, or sale of real property of the decedent, he must be satisfied, by legal proof, that the debts for the purpose of satisfying which the application is made are justly due and owing from the testator or intestate, as against the owners of the real estate." Baker v. Kingsland, 10 Paige, 368. The claims of Anna T. Pfohl have not been established to my satisfaction as debts of the decedent, and the same are therefore rejected, and petition dismissed.

Decreed accordingly.